## WM. RENTON, *et al., vs.* PETER ST. LOUIS.

The logic of pleadings stated, and the rigid rules of the common law contrasted with the liberal provisions of the modern code.

A demurrer under our statutes is neither the general nor special demurrer of the common law; but a new creation, with no fitness nor applicability, except in the instances expressed in the statutes.

If a complaint be faulty, but in other respects, than the six made by the code demurrable, such fault, may be reached by motion.

The fitness of a common law form of pleading, in this Territory, is not to be determined by the common law, but, by those of our code, while under our system of pleadings, few common law forms of pleading may be demurrable, most are obnoxious to motions and none are so concise as our act contemplates.

The complaint herein, being the common count for goods sold and delivered, is not assailable by a demurrer, though it might have been subject to a motion on the one hand for its verbiage, and on the other for want of specific statement.

When a demurrer is sustained opportunity should be afforded to amend, if the pleading be amendable, especially is this so, where honest endeavor may be secured by imposition of terms.

The right of demurrer is lost by answering; and even the objections that can be taken advant ge of, at any stage of the the proceedings, must be availed of by some other method.

Such construction should be favored as will lead parties to make early objection to defective pleadings.

The grounds of demurrer must be distinctly specified.

Though a complaint be improperly dismissed, a writ of attachment founded on it falls, but is restored when an appeal is perfected from the erroneous decision.

A transfer, in good faith, of the attached property, during this interval, is valid.

Error to Third Judicial District.

Opinion by DARWIN, Associate Justice.

The plaintiff filed a complaint for goods sold and delivered. The defendants demurred that it did not state facts sufficient to constitute a cause of action, and the demurrer was sustained. The complaint was also dismissed and an attachment based upon it dissolved. The plaintiff appeals. Under our law, which is in the spirit of the "Reformed Practice," and nearly conforms to the letter of the New York code of civil procedure, the substantial requirement of the complaint is that it states facts sufficient to constitute a cause of action. (Sec. 53, Practice Act.)

If a man has a legal right against another, it is because a set of facts generate the right; or more exactly speaking, it is because a certain set of statements or fact-propositions may be truly predicated of their relation to each other. Now if he wants to enforce that right he must enter a complaint which states these fact-propositions, and if denied must prove them. This procedure and requirement conforms to common reason and ordinary logic. The defendant is apprised of what facts the plaintiff bottoms his claim upon and can either prepare to dispute their existence, or conceding that, to dispute that they establish the right demanded. The court called upon to decide the controversy can see clearly what it is, and can determine whether it has the right to decide or not, and when the decision has been made, the facts that have been decided will remain manifested by the archives.

In early times a logic as simple as the above presided over the pleadings, but it was soon abandoned, and there was gradually introduced a technical and artistic system which interposed innumerable difficulties to the pursuit of justice. For now many years these impediments have been diminishing, but until

lately there was a number of forms on legal envelopes labeled as debt, covenant, detinue, trespass, trespass on the case, replevin, etc., within the jealous embraces of some one of which the plaintiff was required to introduce his facts to the Court, and if he brought ever so good a case for relief under a mistaken label, he was dismissed as severely as if the merits were against him. The labeling and the style of envelope had come to be regarded as an essential part of the case itself. But to-day according to our reformed practice, if the plaintiff state the facts, which under the law establish a cause of action, the more informal, ordinary and untechnical the language used, the better, and the cause is unassailable by demurrer, if its statement constitutes a right to a remedy. It will be seen then that the function of the demurrer is not the same under our law that it was under the old practice. There were formerly two kinds; the *general demurrer*, which put in issue the sufficiency of the statement, and which also comprehended the form of action, and the *special demurrer* which was used to assail defects and details of form. Our demurrer is not according to the common law, either a general or a special demurrer, but one whose powers and sufficiencies are governed entirely by our civil practice act. It is a new creation; the old rules have no value, and indeed would mislead us in defining its uses; it has no fitness nor applicability except in the very instances expressed by the act. There are now only six faults which are assailable by demurrer, and they are all defined in Section 54.

A complaint, however, which is in full conformity to that section, and so is quite invincible to demurrer, may be nevertheless very faulty otherwise, as for instance it may have excess and contain improper matter, or may be defective, or so indefinite and undescriptive as to be uncertain, and that sort of a fault which formerly called into requisition the *special demurrer* is now only corrigible by motion. Section 70 provides a motion for removing excess, and another for supplying deficiency, and the motions of this section and the demurrers of Sec. 54, each used in its own statute province are all the appliances now permissible for the attack or reformation of any pleading. The

28

object of our system is to abolish all the merely formal require-
ments and technical impediments which had become by ages
increased into pleadings, and to restore common sense and re-
tain alone sound logic.   Whether a common law form is good
or not, now will not depend on what the *old* practice said of it,
but on what the new one says.   All the old forms contain far
more verbiage than is needed under our law, many of them
would not be demurrable, most of them would be obnoxious to
the motions of Sec. 70, and none of them are so concise and or-
dinary in phrase as to comply with the curt and crisp business
sense of our act.

The complaint in question is a "common count for goods,
wares and merchandise sold and delivered."   It contains irrele-
vant matter and legal propositions of which it might have been
purged by the motion of Sec. 70, but it nevertheless contains
fact-propositions enough to show that the defendant was in-
debted to the plaintiff and thus states a cause of action and is
therefore proof against a demurrer.

While our practice act by sections 2 and 50 thereof, abol-
ishes all common law forms of action, it does not abolish the
statements used in them.   It rather signifies that their form,
or any form whatever is unnecessary, than discloses their state-
ments to be in any case utterly inapplicable.   The use of a com-
mon count indicates a misapprehension of the meaning of the
code, betrays a painful want of sympathy with its excellent
common sense, supposes a mechanical rather than a logical ac-
quaintance with pleading, and should be discouraged but only
so far as may be consistent with the spirit of a system which
even declines to push its own utterances to the extremity of
hindering or delaying justice.   A common count however
would not be good or bad now as it conformed or not to com-
mon law rules, but as it conformed to the provisions of the
practice act, that is, it would be invulnerable to demurrer if it
stated facts enough to be a cause of action, and to motion if it
had no excess or deficit, that is, if it did not violate Sec. 54 nor
Sec. 70, it would be a good complaint and conformity with 54
is to be tested by demurrer, and with 70 by motion.

A complaint may state sufficient facts to constitute a cause, and may also in excess state other matter which may be quite *irrelevant*, or which may be *redundant*, or which may be the *testimony* by which such facts are to be established. Or it may, while it states a cause of action do so in statements so general as not to difference the cause sued on from some other cause with the defendant, which uncertainty the defendant may cause to be diminished or removed by the motion of Sec. 70. If a complaint be good against a demurrer the defendant will seldom object that it states more than it need do, that it states something irrelevant or redundant, or that it states needlessly the testimony by which plaintiff expects to sustain his facts, but if he chose to object by the motion of Sec. 70, the plaintiff may be chastised into conformity to the code.

Regarding the generalness or particularity of the propositions which constitute the cause of action, it may be said that while a general statement of the sale and delivery of personal property for a stated price, will constitute as good a cause of action for the price as if the statement described the kind of property, and so would be unassailable by demurrer, yet perhaps the case may be one in which the defendant ought to be more definitely advised of the very thing whose price is sued for, as whether a horse or cow, and if many such things have passed between the parties, the defendant might have a right to have the particular one whose price was sued for described in some way so as to be differenced from others which might be possible causes of action. In all such cases the court will be advised of some reason by the details of the motion for more particularity and will use its discretion in requiring it. This complaint might have been purged of its verbiage and legal conclusions, if the defendant had moved to that effect and the court had concluded that the cause of justice would have been adorned thereby, but the defendant did not make the proper motion, and his demurrer was not the statute mode of attack. And if the defendant's objection was that the complaint was not certain enough, he equally mistook his remedy which was by motion of Sec. 70, for more specific statement, or by the de-

mand of Sec. 68, for a copy of the account sued on. We have said that however faulty the complaint was, it stood invulnerable to demurrer and so the demurrer should have been overruled. It is claimed that the bill of exceptions does not show that the demurrer found in the transcript is the one which was sustained. The bill shows, however, that the complaint was held bad on *some* demurrer, and because, being good, no demurrer should have prevailed against it, such decision was error. In the rest of the argument we will suppose, as we can do so without prejudice to the defendant, that the demurrer found in the transcript is the one which was sustained.

The proper judgment on sustaining this demurrer would have been that the complaint did not state facts sufficient to constitute a cause of action. What it was in this case we do not know but as the record shows that the complaint was dismissed, we presume it was done because the plaintiff, not desiring to amend, chose to stand or fall by his complaint. The plaintiff would have been allowed to amend; if he had done so, the defendant might possibly have asked to continue. If the amendment had but stated the same cause of which the plaintiff has already given due notice, the defendant would have had no ground to continue, and if a different one, then though he might have had a right to continue he would have had none to dismiss. When a defendant is actually in court on sufficient notice there is no reason in justice why a plaintiff who can state a cause at all should by a dismissal be compelled to return at the expense of new service; especially when we remember that the court may secure honest endeavor by its imposition of terms which may include costs. And in this case the defendant had put the notice beyond question by answer and by demurrer, either of which worked an appearance. In considering the action of the court on this demurrer, the further question arises, whether the defendant who had answered should have been allowed to demur six months thereafter. While Sec. 57 provides that the objection of unsufficient fact-statement in the complaint shall not be waived by failing to demur, and the act of January 30, 1864, provides that that objection may be made at any stage of pro-

ceedings, we do not think the sections justify a demurrer after an answer. If during the stage of pleading the defendant has failed to make the objection at the proper time and by the proper mode of objecting in that stage, namely, a demurrer filed before an answer, then he may make it during the trial by the proper appliance of objection at such stage. If it is made during the trial in the form of an objection to proffered evidence, which evidence would constitute good cause of action, but would exceed the statements of the complaint, or if made in the form of instructions to the jury; then in either case the plaintiff would, were his proof ample enough, amend his petition to state what it should have done at first. And if the objection came after a verdict for the plaintiff, which either found special facts, making a good cause of action, or after a general verdict of liability, which at common law would cure the omission of complaint, then the plaintiff would amend by inserting in his complaint the sufficient facts which he had already proved to obtain his verdict. But he would certainly not be expected to make the objection in each of these contingencies by demurrer. The sections cited do not mean that the objection must be made by a demurrer only, but that the fault, though unassailed by demurrer will not be therefore raised, but may be otherwise made afterwards. If the defendant, negligently fails to object early by demurrer, he must suffer the grievance of waiting the next more tardy opportunity.

Such construction should be favored as would lead to an early objection, because if the plaintiff really cannot establish a cause of action, the earlier the stage in which that fact is determined, the more consonant with justice and with economy. While if plaintiffs have a cause at all, the facility of amendment at any stage will enable him to realize it and preclude the defendants obtaining any advantage by delaying his objection. This demurrer therefore should have been overruled because it was filed after an issue of fact had been joined, and when the defendant had waived the right to object by demurrer and been remitted to the next stage for such objections as were pertinent in that stage. Again, the demurrer itself should have been

overruled rccording to Sec. 55, without consideration, because it did not distinctly specify the grounds of objection. The object of our demurrer is to specify the defect, and thus enable to prompt attainment of a fact-issue, if one be attainable. It is not enough to demur in the terms of some one of the six classes, but the grounds which bring it within such clause must be stated.

It is not enough to say in the terms of Sec. 54, that from the complaint it appears that "the court has no jurisdiction;" but *how* it so seems. "The grounds of that objection" in the spirit of Sec. 55 should be "specified." It is not enough to demur that the complaint does not state facts sufficient to constitute cause of action but the demurrant must specify why it does not, "the grounds of objection" and the reasons why it falls within that clause. The statements which the party would allege to the court in support of his demurrer are the grounds of his objection to the complaint, and the substance of these is what his demurrer should "specify" as for example that it did not aver notice, or demand, or delivery, or compliance with some condition precedent, or such other fact omitted and requisite to make a complaint good. If the defendant has a good ground for objections, this requirement of specification imposes no hardship, and the plaintiff being advised by defendant's specification rather than his arguments thereon that his complaint is insufficient, may move promptly if he has a good cause, get it ready for adjudication.

Therefore because this demurrer not being specific enough should have been disregarded it was further error to sustain it. When this complaint was dismissed the attachment founded upon it was also dissolved. A writ of error was at once taken out by the plaintiff, and the cause brought to this court. The appeal on its being perfected restored the case and its attendant attachment to the condition in which it was before the erroneous decisions complained of. There was an interval during which the attachment stood dissolved, and the attached property discharged. If during that interval a transfer were perfected to a *bona fide* vendee, his title would be unquestioned and such

property thereby placed beyond the contingencies of any appeal; but if the interest of the plaintiff remained unchanged, the appeal restored the attachment to all its encumbering efficiency.

The conclusions we have come to regarding the question discussed herein are mainly based on the meaning and intent of our practice act itself, which introduces a system capable of receiving no illustration from the books on common law pleading. It is a rigorous protest united in by us with nearly half the States, and even with the English people themselves, against the illogical and mischievous impediments which had so intertwined themselves around adjective law, as to make the pursuit of justice ridiculously uncertain and shamefully expensive. It is a system but studied in its own utterances and best understood from its declared and known purposes, and yet during the dozen years in which it has presided over the practice of many of the States there have been several decisions sustaining the principles herein announced. Participating in the fortune of all reforms it has had to struggle with ignorance, bigotry and prejudice, with the natural disinclination of stiff-jointed fogyism to abandon its formal crutches; with the natural loathness of those skilled in legal legerdemain to forego its lucrative and brilliant success, yet it is everywhere attaining popular acceptance and the later decisions are mainly made in its interest.

With such decisions, which are liberally cited in all the late books on the new practice, we think the conclusions we have herein attained are in full accord; and yet we forbear quoting them, for the system as we have said is rather to be studied in its wholeness, even for the comprehension of its detail, than from a few even friendly but disconnected decisions on its parts. Besides the act is also our legislative protest against legal slight-of-hand, and we must contribute our part also, in conscientious deference to the legislative will so to "liberally construe" it according to the command of Sec. 54, as that in the avowed purpose of Section 59, "substantial justice may be done between the parties."

The rulings of the court below are therefore reversed, and the cause remanded to be dealt with in conformity with this opinion.